IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MONICA VIGIL,<br><br>       Plaintiff,<br><br>v.<br><br>SALT LAKE CITY CORPORATION,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [9] SALT LAKE CITY CORPORATION'S PARTIAL MOTION TO DISMISS**<br><br>Case No. 2:20-CV-00344-DBB-DAO<br><br>District Judge David Barlow |

    Before the court is a partial motion to dismiss. Defendant Salt Lake City Corporation requests dismissal with prejudice of part of Plaintiff's first cause of action for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and all of Plaintiff's second and third causes of action for failure to state a § 1983 equal protection claim and for breach of contract.

## BACKGROUND[1]

    From October 2009 until her termination on August 22, 2018, Plaintiff Monica Vigil worked in the Golf Division of Defendant Salt Lake City Corporation's (SLCC) Public Services Department.[2] Vigil taught daily golf lessons for SLCC prior to her termination and achieved the status of Professional Golf Association (PGA) associate beginning in 2014.[3]

---

[1] The court recites the factual allegations contained in the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" (citation omitted)).

[2] Complaint at ¶ 6, ECF No. 5-1.

[3] *Id.* at ¶¶ 7, 8.

In October 2017, Vigil reported to her supervisor and to the Human Resources Department of SLCC that she had been sexually harassed by a coworker.[4] Vigil filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) relating to the sexual harassment, and she and SLCC engaged in mediation on June 4, 2018 to resolve the claim.[5] The resolution of the claim required Linda Shaffer, the Director of SLCC's Public Services Department, to conduct a series of meetings with Vigil, her harasser, and three other male employees who Vigil felt had become hostile to her because of her sexual harassment complaint.[6] The stated purpose of the mediation-mandated meetings was for Shaffer to reiterate SLCC's commitment to a workplace free of discrimination, harassment, and retaliation, and affirm the importance of treating all individuals with courtesy and respect—though Vigil did not feel that the meetings were necessarily effective at accomplishing that goal.[7] Multiple incidents in the summer of 2018 seemed to suggest that the meetings did not create a more positive atmosphere in the department: Vigil was falsely accused of drinking a beer in her car, and signs advertising her golf classes were vandalized.[8]

The final settlement-mandated meeting occurred on July 13, 2018.[9] Pursuant to encouragement to report drug use that she witnessed, Vigil reported to Human Resources that she had observed a coworker smoking marijuana at the golf course around August 1, 2018.[10] Following Vigil's report, SLCC notified the individual she had reported and gave him advance

---

[4] *Id.* at ¶ 10.
[5] *Id.* at ¶ 11.
[6] *Id.* at ¶ 12.
[7] *Id.* at ¶¶ 12, 13.
[8] *Id.* at ¶¶ 13–15.
[9] *Id.* at ¶ 16.
[10] *Id.* at ¶¶ 17, 18.

notice of a drug test the next day, allowing him to prepare for the test.[11] The individual's test came back negative. Despite the fact that he was known by several other Golf Division employees to have a pattern of selling and using drugs at the golf shop, SLCC made the decision to terminate Vigil on the grounds that she had falsely reported the other employee's drug use.[12] She was notified of her termination on August 22, 2018, and SLCC has since refused to provide references or information about her performance as an instructor to other golf courses, substantially limiting her ability to find employment elsewhere or to use her PGA associate title.[13]

On May 19, 2019, Vigil filed a claim of retaliation with the EEOC.[14] On February 27, 2020, she received a Right to Sue letter, exhausting her administrative remedies and authorizing this suit.[15] She timely filed her Complaint in the instant matter on May 7, 2020.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face."[16] A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] Where the well-pleaded facts "are 'merely consistent with' a defendant's liability," the plaintiff has not crossed the "'line between possibility and

---

[11] *Id.* at ¶ 20.

[12] *Id.* at ¶¶ 19, 21.

[13] *Id.* at ¶¶ 22–25.

[14] *Id.* at ¶ 5.

[15] *Id.*

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

plausibility of entitlement to relief.'"[18] A court reviewing a complaint under Rule 12(b)(6) must "accept as true all well-pleaded factual allegations . . . and view them in the light most favorable to the [plaintiff]."[19] Bare assertions and conclusory allegations are not entitled to the presumption of truth.[20]

### I.  Plaintiff Has Plausibly Alleged a Retaliation Claim in Violation of Title VII.

Plaintiff has pleaded facts with sufficient specificity to support a plausible claim of retaliation in violation of Title VII. 42 U.S.C. § 2000e-3(a) prohibits retaliation against an individual who has made a Title VII discrimination claim: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[21] A claim based on gender discrimination is described at 42 U.S.C. § 2000e-2: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . [the individual's] sex."

In the Tenth Circuit, to establish "a prima facie case of retaliation" under Title VII, an individual "must establish that: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[22] Once the individual has established the

---

[18] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[19] *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

[20] *Iqbal*, 556 U.S. at 681.

[21] 42 U.S.C. § 2000e-3(a)

[22] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001).

prima facie elements of a retaliation claim, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[23] The individual must then demonstrate that the proffered legitimate reason is pretextual.[24] Plaintiff's documented 2017 gender discrimination claim readily qualifies as "protected opposition to discrimination" within the standards of Tenth Circuit precedent, satisfying the first element.[25] Plaintiff's termination in 2018 likewise meets the requirements for an "adverse employment action" in the second element, leaving only the third element to be established.[26]

"A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"[27] "Very close temporal proximity" between the protected activity and retaliatory conduct may establish a causal connection.[28] The Tenth Circuit has held that a six-week period between a protected activity and retaliatory conduct could by itself establish causation, while a three-month period standing alone was not adequate.[29] If the temporal proximity is not sufficiently close, the plaintiff must offer additional evidence of causation.[30] Plaintiff notes that her termination occurred approximately five weeks after the final settlement meeting mandated by the resolution of her original discrimination claim. For purposes of the temporal proximity aspect of causal

---

[23] *Id.*

[24] *Id.*

[25] Her gender discrimination complaint qualified as protected activity as described by the statute (she made a "charge" based on discrimination "with respect to . . . sex"); *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1016 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors.").

[26] *O'Neal*, 237 F.3d at 1255; *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

[27] *O'Neal*, 237 F.3d at 1253, quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982).

[28] *Id.*

[29] *Id.*

[30] *Id.*

connection, however, the critical nexus is the proximity between the filing of the original discrimination claim and the adverse employment action—her termination.[31] The ten months that elapsed between Plaintiff's original discrimination charge and her termination falls well outside the three-month window that the Tenth Circuit has already deemed excessive in inferring causality without additional evidence.[32]

Nevertheless, the lack of "very close temporal proximity" is not fatal to Plaintiff's claim at this stage. While the elements of the prima facie claim are instructive, in "*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court explained that *McDonnell Douglas's* prima facie case is 'an evidentiary standard, not a pleading requirement' . . . and simply do[es] not 'apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'"[33] Thus in "pleading a discrimination claim, [a plaintiff] need not set forth a prima facie case for discrimination. But she must allege facts that make such a claim at least plausible."[34] Even though the temporal proximity alleged does not independently support causation, Plaintiff pleads other background facts that could support causation. For example, the continued hostility she experienced from coworkers and the suggestion from management that the hostility was justified due to her discrimination complaint all occurred near the time of her termination, following the final settlement of her initial claim.[35] At the motion to dismiss stage, Plaintiff need only plead facts making her claim of retaliation plausible; her Complaint has done

---

[31] *Id.* at 1252 (the causal connection is "between the protected activity and the adverse employment action.").

[32] *O'Neal* at 1253, *quoting Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982).

[33] *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (unreported).

[34] *Id.*; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

[35] Complaint at ¶¶ 13–16.

so. Additionally, after Plaintiff clarified that only her termination (not other alleged acts) was the basis for the retaliation claim, Defendant has not offered any arguments for dismissing the Title VII retaliation claim.[36] Accordingly, this claim survives the motion to dismiss and will proceed to discovery.

   II. **Plaintiff Has Failed to Adequately Plead a § 1983 Violation of Equal Protection Claim.**

Plaintiff's Complaint, as currently constituted, does not adequately plead the facts necessary to plausibly support a § 1983 violation of equal protection claim. To do so, it must both a) set forth a plausible equal protection claim recognizable in the Tenth Circuit, and b) establish a valid foundation for bringing a claim against SLCC as a municipality rather than against specific public officials.

   a. **Plaintiff Fails to Plead Facts Consistent with the Elements of a Cognizable Equal Protection Claim in the Tenth Circuit.**

42 U.S.C. § 1983 creates a civil cause of action for individuals whose constitutional rights have been violated by a state public official or entity: "Every person who, under color of any statute… subjects… any citizen of the United States… to the deprivation of any rights, privileges or immunities secured by the Constitution and its laws, shall be liable to the party injured in an action at law." The Equal Protection Clause is a constitutional guarantee enshrined in the Fourteenth Amendment, and "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[37] The Tenth Circuit has held that "[t]he Clause's

---

[36] Plaintiff's Opposition to Defendant's Partial Motion to Dismiss at 3–4, ECF No. 12; *see* Defendant's Reply Memorandum in Support of Motion for Partial Dismissal of Plaintiff's Complaint, ECF No. 13.

[37] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

protections extend to disparate treatment based on race and gender."[38] However, "retaliatory conduct" is not similarly contemplated within § 1983 in the Tenth Circuit.[39] Therefore, in order to plead a cognizable claim, Plaintiff must allege plausible facts that set forth a disparate treatment claim under the Equal Protection Clause.

"To prove an equal-protection claim based on disparate treatment, a plaintiff must provide either direct evidence of discrimination or prevail under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."[40] "The Supreme Court recognized in *McDonnell Douglas* that the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged."[41] Nevertheless, the "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"[42] The generally accepted elements of a prima facie case of disparate treatment based on gender are "(1) membership in a protected class, (2) adverse employment action," and "(3) circumstances giving rise to an inference of discrimination," which may be demonstrated by "disparate treatment among similarly situated employees."[43] More precisely, the third element may be demonstrated by "providing evidence that [the employee] was treated differently from other similarly-situated, nonprotected employees who

---

[38] *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265-66 (10th Cir. 2013).

[39] *Id.* at 1266 ("Allstate also brought a retaliation claim under § 1983 asserting a denial of equal protection, but this court does not recognize such a claim.").

[40] *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (unreported); *see Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[41] *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

[42] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000), *quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981).

[43] *Orr v. City Of Albuquerque,* 417 F.3d 1144, 1149 (10th Cir. 2005); *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

violated work rules of comparable seriousness."[44] "Similarly situated" means that the other employee "deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline.'"[45] "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated," though not every difference in treatment should necessarily be construed as establishing discriminatory intent.[46]

      Plaintiff's Complaint satisfies the first two elements of a prima facie disparate treatment claim. By virtue of her gender, she is a "member of a protected class."[47] And her termination constitutes an adverse employment action.[48] But with regard to the last element, Plaintiff does not plead sufficient facts making plausible disparate treatment based on gender. Though she does allege that she was "treated differently than" a "male employee," she does not plead facts suggesting that the male employee was "similarly situated," such as by describing whether he had the same supervisor or was subject to the same policies.[49] As with pleading a Title VII discrimination claim, the *McDonnell Douglas* framework is an evidentiary standard, not a pleading requirement, but the elements help inform the plausibility of the claim.[50] Here, where

---

[44] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).

[45] *Id.*, quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1204 (10th Cir. 1997).

[46] *Aramburu*, 112 F.3d at 1404.

[47] *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723 (1982).

[48] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001).

[49] Complaint at ¶ 39

[50] *Khalik*, 671 F.3d at 1192 ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

Plaintiff has alleged no facts regarding similarity of her situation with the comparable male employee, she fails to plead a cognizable equal protection claim.

### b. Plaintiff Has Established a Valid Basis for Her Claim Against SLCC as a Municipality.

Section 1983 equal protection claims may be brought against both individuals and local government units.[51] However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory."[52] Rather, "a local government is liable only when 'the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'"[53] Accordingly, a plaintiff must either "identify 'a government's policy or custom' that caused the injury" and "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury"[54] or must plead facts demonstrating that the allegedly unconstitutional action was carried out by an official with "final policy making authority"[55] over the challenged action.

Plaintiff has adequately pleaded facts only under the latter theory to plausibly support a § 1983 equal protection claim against Defendant SLCC. She claims that "Ms. Shaffer was an official with final policy making authority" over Plaintiff's employment and "made the decision to terminate [Plaintiff] without rational basis."[56] Plaintiff also asserts that there was a

---

[51] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("municipalities and other local government units [are] included among those persons to whom § 1983 applies.").

[52] *Id.* at 691.

[53] *Bird v. W. Valley City*, 832 F.3d 1188, 1207 (10th Cir. 2016) (*quoting Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000)).

[54] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

[55] *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

[56] Complaint at ¶ 42.

government policy ("SLCC employees and/or officials acted pursuant to a policy of terminating [Plaintiff] because she complained"),[57] but because the alleged policy sounds in retaliation, it is not cognizable as an equal protection claim.[58] It is sufficient, however, that Plaintiff has identified an official with final policy making authority who was responsible for her allegedly unconstitutional termination. On that basis, the facts alleged plausibly support a foundation for bringing a claim against Defendant as a municipality.

Accordingly, Plaintiff has adequately alleged facts that create a plausible basis for her § 1983 equal protection claim against Defendant as a municipality. She has also effectively set out her membership in a protected class and established the adverse employment action taken against her, the first two elements of a prima facie disparate treatment claim. However, she has failed to plead sufficient facts regarding disparate treatment. For that reason, Defendant's partial motion to dismiss is GRANTED IN PART.

### III. Plaintiff Has Not Pleaded Facts Supporting a Breach of Contract Claim with Sufficient Specificity.

While at the motion to dismiss stage pleadings are to be interpreted in favor of the non-moving party, facts must still be plead with sufficient specificity to support a plausible claim for relief and consist of more than just conclusory allegations.[59] Plaintiff has not met that threshold with regard to her breach of contract claim because the assertions in her complaint are too general to state a plausible claim for relief.

---

[57] Complaint at ¶ 43.

[58] *Allstate Sweeping*, 706 F.3d at 1266.

[59] *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In the state of Utah, the general rule is that "employment of public employees is 'governed by statute, not contract.'"[60] However, an implied contract may arise under circumstances in which "'the government voluntarily undertakes an additional duty' beyond its normal obligation to the employee."[61] When this is the case, "[a]n implied contract may arise from . . . personnel policies or provisions of an employment manual."[62] Though an implied contract may arise from employee manuals or personnel policies, the Utah Supreme Court has also determined that "a clear and conspicuous disclaimer, as a matter of law, prevents employee manuals or other like material from being considered as implied-in-fact contract terms."[63] If a disclaimer is unclear or limited in scope, an implied contract may still exist.[64] Defendant's partial motion to dismiss references Salt Lake City Corporation's electronic policy manual and points to the clear and conspicuous disclaimer it contains, arguing that it would operate to prevent the manual from forming the basis for an implied contract. However, Plaintiff did not identify any specific source for the express or implied contract she alleges was breached, so it is unclear whether she intends to rely on that manual.

Plaintiff's failure to plead facts regarding the basis of the implied contract is fatal to her claim. Previous cases are instructive. In *Bayliss v. Contel Fed. Sys., Inc.*, a terminated employee's breach of implied contract claim survived a motion to dismiss where she was able to

---

[60] *Canfield v. Layton City*, 2005 UT 60 ¶ 16, 122 P.3d 622, 626 (2005) (*citing Buckner v. Kennard*, 2004 UT 78, ¶ 32, 99 P.3d 842).

[61] *Id.*

[62] *Cabaness v. Thomas*, 2010 UT 23 ¶ 55, 232 P.3d 486, 502 *abrogated on other grounds by Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, 424 P.3d 897.

[63] *Id.*, quoting *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1000 (Utah 1991); *see also Tomlinson v. NCR Corp.*, 2014 UT 55, 345 P.3d 523 (no implied contract from an employee manual where a disclaimer created the "express intent" that the provisions contained therein did not give rise to a contract).

[64] *Cabaness* at ¶ 58 (where an employer disclaimed contractual liability with respect only to a few specified items, the "plain meaning" of the disclaimer was that the employer intended to create a contract for other items in the employee manual not specifically listed in the disclaimer).

identify specific procedures "outlined in two policy manuals."[65] Being able to identify a specific employee manual is not necessarily a guarantee, however. In *Romstad v. City of Colorado Springs*, even where the terminated employees alleged reliance on their employer's personnel handbook, both the language of the handbook and its clear and conspicuous disclaimer undermined the plaintiffs' allegations of an implied contract, which were dismissed.[66] Meanwhile, the Tenth Circuit has held that dismissal of a breach of contract claim was proper where the plaintiff borrowers suing a bank "provide[d] no specifics about what warranties or promises were violated."[67] Here, Plaintiff's pleading likewise provides "no specifics" about the source, context or content of the alleged contract, except that the Defendant's express or implied policies "promise employees that they will not be retaliated against for complaining about harassment."[68] The Complaint fails to identify any specific policies, procedures, handbook, or manual provisions that may contain the anti-retaliation promises alleged. To clear the pleading hurdle, Plaintiff must plead facts about the source of the alleged implied contract. Accordingly, Defendant's partial motion to dismiss is GRANTED IN PART with respect to this cause of action.

## CONCLUSION

For the reasons stated in this Memorandum Decision and Order, Defendant Salt Lake City Corporation's Partial Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. Plaintiff's Second and Third Causes of Action are DISMISSED WITHOUT PREJUDICE.

---

[65] 930 F.2d 32, *1 (10th Cir. 1991).

[66] 650 F. App'x 576, 580-81 (10th Cir. 2016) (unreported).

[67] *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 522-23 (10th Cir. 2013).

[68] Complaint at ¶ 51.

Signed December 17, 2020.

BY THE COURT

_____
David Barlow
United States District Judge

14